**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3662-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL A. JACKSON,

     Defendant-Appellant.

Argued January 29, 2019 – Decided  March 4, 2019

Before Judges Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 15-02-0154.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the brief).

Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Michael A. Monahan, Acting Union County Prosecutor, attorney; James C. Brady, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury found defendant Michael A. Jackson guilty of third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2. He was sentenced to an extended term of seven years in prison. He appeals his conviction arguing that his trial counsel was restricted in cross-examining a co-conspirator who testified against him. We discern no reversible error and affirm.

I.

The facts at trial establish that on November 6, 2014, the home of L.G., who lived in Rahway, was burglarized.[1] A television, laptop, and PlayStation were taken. L.G. testified that on the morning of the robbery, he was called several times by his former girlfriend, co-defendant Tiffany Taylor. Taylor asked him whether he was available for a visit and requested to borrow money. L.G. told Taylor that he had somewhere he had to go. Shortly thereafter, L.G. was standing on his porch when he saw a vehicle that he believed to be Taylor's car drive by his home.

L.G. thereafter left his home in his car to give a ride to a friend. He was gone only a few minutes, and as he was driving back to his home, he again saw a car that he believed to be Taylor's vehicle. As he was driving up to his house,

_____

[1] We use initials for the victim to protect his privacy interests.

A-3662-16T1

L.G. saw a man exit his home carrying his television. That man was later identified as Javon Clarke. L.G. drove his car on to the sidewalk in an apparent effort to stop Clarke, but Clarke ran away. L.G. telephoned the police and gave a description of Clarke, Taylor, and her vehicle. L.G. then went into his home, found the back door broken, and noted that his television, laptop, and PlayStation equipment were missing.

Meanwhile, defendant's vehicle, with defendant and Clarke in it, was stopped by police in the neighboring town of Linden. Shortly thereafter, Rahway police arrived at the scene of the stop. A police officer arranged to have L.G. driven to the scene of the stop, where L.G. identified Clarke as the individual he saw exiting his home. L.G. also recognized defendant as an ex-boyfriend of Taylor.

Clarke was taken into custody and later he provided a statement to the police. During his statement, Clarke admitted that he had participated in the burglary and explained that he had committed the burglary with defendant and Taylor.

The State offered Clarke a plea deal under which he would serve three years in prison in exchange for pleading guilty to burglary and providing "truthful" testimony implicating defendant and Taylor in the burglary. The plea

agreement was discussed with a judge, and the judge explained that he might sentence Clarke to 180 days in jail, plus probation, if Clarke provided truthful testimony. Subsequently, Clarke pled guilty to burglary and during his plea he testified that defendant and Taylor participated in the burglary.

Defendant and Taylor were indicted for third-degree burglary, N.J.S.A. 2C:18-2; third-degree theft of property with value in excess of $500, N.J.S.A. 2C:20-3; and third-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2. Taylor and defendant were tried together before a jury.

Clarke testified at trial that defendant participated in the burglary of L.G.'s home. According to Clarke, defendant had called him on the morning of the burglary and, later, defendant had picked up Clarke in defendant's vehicle. Defendant and Clarke drove to Taylor's home where she was waiting in her car. Defendant and Clarke then drove to L.G.'s home and Taylor drove separately in her own car.

Clarke went on to testify that when he and defendant pulled up near L.G.'s house, they saw two people standing on the porch. Once those people left, defendant and Clarke walked to the rear of the house where defendant broke the back-door window to gain entry to the house. Once inside, Clarke took the television, and he testified that defendant took the PlayStation and laptop.

Clarke exited through the front door where he saw L.G. returning home. Clarke dropped the television and ran to defendant's vehicle. Defendant also arrived at his vehicle and he and Clarke then drove towards Taylor's home. On their way, they were stopped by police officers.

During defense counsel's cross-examination of Clarke, the following exchange took place:

> [DEFENSE COUNSEL:]　　　Okay. Now, when you gave the plea it was a plea bargain as you understood it, correct?
>
> [CLARKE:]　　　Yes.
>
> [DEFENSE COUNSEL:]　　　And you were represented by an attorney, correct?
>
> [CLARKE:]　　　Yes.
>
> [DEFENSE COUNSEL:]　　　And your attorney explained to you that you were facing three to five years for a third-degree burglary, correct?
>
> [CLARKE:]　　　Yes.
>
> [STATE:]　Your Honor, the State objects and believes it's inappropriate to talk about the term that a defendant is going to be subject to.

At a sidebar conference, Taylor's defense counsel argued that Clarke's knowledge of the sentencing range was necessary to show Clarke's state of mind when accepting the plea deal. The State argued that evidence of the sentencing

5

range apprised the jury of defendant's potential exposure to prison time. The trial judge ruled as follows:

> THE COURT: Well, I don't have an issue with you guys talking about what the offer was that the State put on the table. But I want to stay away from the ranges because indirectly that implicates what a jury might be exposed to think if your clients are charged with the same crime (indiscernible).
>
> So I don't want them prejudiced at all in this case. If you want to talk about the scope of what the State was offering and didn't . . . offer you, you know like a five flat or something like that. And ultimately to just settle on this I don't have a problem with that.

The judge then issued the following instruction to the jury:

> THE COURT: Ladies and gentlemen, I'm going to strike the last question and any comment thereto. I'm going to allow it to be rephrased. But I want to give you a limited or a curative instruction that what may have been discussed or what may come out as to what this individual that's testifying may have discussed in terms of his involvement is separate and apart. It has nothing to do with the defendants that are on trial.
>
> So his bargaining or discussion is separate and apart and it is no way implicated or inferred upon the other defendants. So you can't look at what was said or done with this defendant as to the other defendants. You're just here as finders of the fact.

A-3662-16T1

Ultimately, on cross-examination, defense counsel was able to establish that Clarke avoided state prison and received 180 days in jail as a part of his plea deal, which involved him giving testimony at defendant's trial.

As part of its case, the State also called an assistant prosecutor who had participated in negotiating the plea deal with Clarke. On cross-examination of the assistant prosecutor, defense counsel asked the following questions:

> [DEFENSE COUNSEL:]     So the three flat – now the three flat was the lower end of the spectrum of what Mr. [Javon] Clarke was facing, correct?
>
> [ASSISTANT PROSECUTOR:]     It was – yeah. Because it would be three to five years if –
>
> [DEFENSE COUNSEL:]     Right.
>
> [ASSISTANT PROSECUTOR:]     Yeah.

Later in the cross-examination, the following exchange took place:

> [DEFENSE COUNSEL:]     Right. And so your deal was a three flat which was considerably low, there's only – the lowest spectrum, correct?
>
> [ASSISTANT PROSECUTOR:]     I would disagree it's low. It was State Prison, sir.
>
> [DEFENSE COUNSEL:]     Right. But he was facing, as you said, from three to five, correct?
>
> [ASSISTANT PROSECUTOR:]     Sure.

A-3662-16T1

The State objected, and at sidebar, the parties iterated their arguments concerning the significance of the sentencing range. The judge directed defense to "stay away from the range," but ruled that he would allow defense counsel to elicit testimony regarding the plea deal of three years and the later plea deal of 180 days.

In an attempt to establish that the three-year plea deal was at the low end of the sentencing range, defense counsel asked the assistant prosecutor the following:

> [DEFENSE COUNSEL:] So as part of the plea deal instead of getting the maximum he was at the lowest end possible of the spectrum considering the crime, correct?
>
> [ASSISTANT PROSECUTOR:] No. No. The lowest end possible would have been more probation without any custody.

After the assistant prosecutor finished testifying, the judge gave another limiting instruction to the jury that Clarke's plea deal was "separate and apart" and had "no bearing on the two individuals that are on trial before you today." In addition, Clarke's plea transcript was admitted into evidence with the maximum sentence exposure redacted.

At summation, the State made the following argument regarding Clarke's plea deal:

8

And he was never offered the lowest sentence. On that type of crime, [the assistant prosecutor] testified, that he could have been given straight probation. Straight probation. And he was offered, by the state, three years in state prison. The state didn't take that back and give him 180 days. The judge did it on his fourth page.

So you're not talking about the state just coming in and lying on the floor, like, please, testify against your two co-defendants. Pretty please. No. That's not what they did. Three years in state prison is no picnic. And that's what we offered because we thought the crime was serious enough and he had a couple prior convictions. And the judge gave him the 180 days. So we weren't trying to be more lenient. The judge did. The judge has a right to do that. The judge did it. He served his time.

The jury found defendant and Taylor not guilty of burglary or theft, but guilty of third-degree conspiracy to commit burglary. Defendant now appeals his conviction.

## II.

Defendant makes one argument, contending that the trial court limited the cross-examination of Clarke and that limitation deprived defendant of his constitutional right to confront a key witness who testified against him. Specifically, defendant articulates his argument as follows:

DEFENDANT WAS DEPRIVED OF HIS RIGHT TO CONFRONTATION WHEN THE COURT BLOCKED CROSS-EXAMINATION OF A COOPERATING WITNESS ON THE SENTENCING EXPOSURE

THAT HE HAD AVOIDED THROUGH A PLEA DEAL. <u>U.S. CONST.</u> AMEND. VI, XIV; <u>N.J. CONST.</u> ART. I, PARA. 10.

Defendant also argues that the limitation was "exacerbated" when the State was allowed to use the low end of the sentencing range—that is, "straight probation"—to argue that Clarke had not received such a good deal.

We review evidentiary rulings, such as the scope of questioning witnesses, under an abuse of discretion standard. <u>State v. Nantambu</u>, 221 N.J. 390, 402 (2015) (quoting <u>State v. Harris</u>, 209 N.J. 431, 439 (2012)). Such determinations "are subject to limited appellate scrutiny," and should not be overturned without a showing of a "clear error of judgment" by the trial court. <u>Harris</u>, 209 N.J. at 439 (first quoting <u>State v. Buda</u>, 195 N.J. 278, 294 (2008); then quoting <u>State v. Brown</u>, 170 N.J. 138, 147 (2001)).

"The Confrontation Clause permits a defendant to explore, in cross-examination, a prosecution witness's alleged bias." <u>State v. Bass</u>, 224 N.J. 285, 301 (2016). Both the United States Supreme Court and our Supreme Court have recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." <u>Ibid.</u> (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-79 (1986)). Accordingly, "a charge against a witness that has been resolved by

dismissal or sentencing before the witness testifies may be an appropriate subject for cross-examination." Id. at 304.

While "[t]he nature of the witness's alleged offense, and the sentencing exposure that he or she confronts by virtue of that offense, is a significant factor[,]" id. at 305, "a defendant's confrontation rights do not entitle counsel 'to roam at will under the guise of impeaching the witness.'" Id. at 302 (quoting State v. Pontery, 19 N.J. 457, 473 (1955)). Consequently, "[a] trial judge may bar inquiry into a witness's potential bias, without offending the Confrontation Clause, because of concerns about 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Id. at 303 (quoting Van Arsdall, 475 U.S. at 679).

In this case, the judge excluded any reference to the sentencing ranges for Clarke's crime because defendant was charged with the same crime. The judge reasoned that such information could improperly prejudice the jury by allowing the jurors to consider defendant's potential sentencing exposure. In New Jersey, "juries do not consider the punishments attendant to offenses in deciding guilt or innocence." State v. Short, 131 N.J. 47, 59 (1993). That rule is based on the idea that such information might cause the jury to be influenced by "what will be the result of its verdict" or might divert the jury from its "chief function";

which is, "decid[ing] the issue of defendant's guilt or innocence." State v. Bell, 102 N.J. Super. 70, 75-76 (App. Div. 1968).

Here, we must balance defendant's right to confront Clarke with the full exposure of his potential sentence, against the trial court's appropriate concern that the jury not apply that information to defendant and Taylor. Read in full context, we discern no reversible error. Defendant's main goal was to undercut Clarke's credibility by demonstrating that he had negotiated a good plea deal and that was the motivation for his testimony. The record amply demonstrates that defense counsel clearly made that point.

The curative instructions given by the trial judge directed the jury not to consider the potential sentencing exposure faced by Clarke in determining the guilt or innocence of defendant and Taylor. Significantly, the jury heard that Clarke's sentence exposure was in the range of three to five years. Indeed, Clarke acknowledged that in cross-examination, and the assistant prosecutor who negotiated the plea deal with Clarke also identified that sentencing range. While the trial judge struck Clarke's testimony, the court did not strike the testimony by the assistant prosecutor.

Just as significantly, the trial judge allowed defense counsel to fully explore that Clarke had faced the potential of a sentence of years in prison, but

12

he was able to ultimately negotiate a plea agreement where he would only be exposed to 180 days in jail and probation. In summary, when the full scope of cross-examination of Clarke and the assistant prosecutor is considered, defendant's constitutional right to confront and challenge Clarke's motivation for testifying as a State witness was not unduly restricted.

We also discern no error in allowing the jury to hear the State's argument that Clarke could have been sentenced to probation with no jail time. Counsel for defendant and co-defendant Taylor both zealously challenged Clarke's credibility and motivation. The jury heard several times that Clarke was exposed to at least three years in prison if he did not negotiate a favorable plea arrangement. There was nothing wrong with the State pointing out that Clarke also could have been sentenced to probation even if he had not negotiated a plea agreement to testify against defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13